UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Holding a Criminal Term
Grand Jury Sworn in on November 3, 2006

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Criminal No. |
| | : | Mag. No. 07-564-AK-1 |
| | : | |
| v. | : | Grand Jury Original |
| | : | |
| MANSOUR SALAHMAND, | : | VIOLATIONS: |
| | : | 18 U.S.C. § 1028(a)(7) (Identity Theft); |
| | : | 21 U.S.C. § 843(a)(2) (Unlawful Use in the |
| | : | Dispensing of Controlled Substance - DEA |
| Defendant. | : | Number Issued to Another Person); |
| | : | 22 DC Code §§ 22-3241(b), 22-3242(c) |
| | : | (Forgery). |

**I N D I C T M E N T**

The Grand Jury charges that:

COUNT ONE

(IDENTITY THEFT)

**Introduction**

At all times material to this Indictment:

    1.    In order to practice medicine as a medical doctor in the District of Columbia, a person must have been licensed by the District of Columbia's Department of Health Regulations and Licensing Administration; to practice in the State of Maryland, a person must have been licensed by the Maryland Board of Physicians.

    2.    A psychiatrist was a medical physician who specialized in the diagnosis, treatment, and prevention of mental illnesses. Psychiatrists were uniquely qualified to assess both mental and physical aspects of psychological disturbances.  To be a psychiatrist, a person must first have been

a medical doctor, then undergone residency training in a hospital setting taking care of patients with a wide range of medical illnesses, and finally, spent three additional years in a residency program gaining skills in various forms of psychotherapy and the use of psychiatric medicines and other treatments. After completing residency training, most psychiatrists would take a voluntary examination given by the American Board of Psychiatry and Neurology to become a "board certified" psychiatrist.

3. Certain drugs, which may prescribed by psychiatrists, were deemed to be Schedule II or Schedule IV controlled substances. The "Schedule II" distinction was given to the most regulated and controlled of the legal drugs (Schedule I controlled substances only consisted of illegal drugs). Adderall and Concerta were both Schedule II controlled substances as each were a "stimulant" with a high potential of being addictive and abused. Xanax, Klonopin, and Ambien were all controlled substances, Schedule IV, in that abuse of these drugs may lead to moderate physical dependence or psychological dependence.

4. The Drug Enforcement Administration (DEA) was an agency of the United States which, among its other duties, regulated the dispensing of controlled substances. In order to prescribe controlled substances, a medical doctor must have permission from the DEA. The DEA registered qualified medical doctors, giving them a registration number, commonly referred to as a "DEA number;" this number uniquely identified the doctor, as no two doctors possessed the same DEA number. A medical doctor may not prescribe a controlled substance without holding his/her own, current, "DEA number." The DEA regulated the persons eligible to prescribe controlled substances because of the risk of controlled substances being abused.

5. In order to prescribe controlled substances in the District of Columbia, a medical doctor must also have permission and obtain a Controlled Substance license from the District of Columbia's Department of Health Regulations and Licensing Administration, Board of Pharmacy and Pharmaceutical Division; in order to prescribe controlled substances in Maryland, a medical doctor must have permission and obtain a Controlled Dangerous Substance license from the Maryland Department of Health and Mental Hygiene, Division of Drug Control.

6. The defendant MANSOUR SALAHMAND was not a licensed physician.

7. The defendant MANSOUR SALAHMAND did not have permission or a license from the District of Columbia's Department of Health Regulations and Licensing Administration, Board of Pharmacy and Pharmaceutical Division to write prescriptions for controlled substances in the District of Columbia.

8. The defendant MANSOUR SALAHMAND did not have permission or a license from Maryland's Department of Health and Mental Hygiene, Division of Drug Control to write prescriptions for controlled substances in Maryland.

9. The defendant MANSOUR SALAHMAND did not have authority from the DEA to write prescriptions for controlled substances and did not possess a DEA number.

10. Dr. MP was a licensed physician, held a valid DEA number, and had the authority to write prescriptions for controlled substances in the District of Columbia and Maryland.

11. Dr. TM was a licensed physician, held a valid DEA number, and had the authority to write prescriptions for controlled substances in the District of Columbia and Maryland.

12. Dr. HK was a licensed physician, held a valid DEA number, and had the authority to write prescriptions for controlled substances in the District of Columbia.

13. Dr. DH was a licensed physician in the District of Columbia until October 2006; Dr. DH had the authority to write prescriptions for controlled substances in the District of Columbia until October 2005.

14. The defendant MANSOUR SALAHMAND worked at some of the same clinics as Doctors MP, TM, HK, and DH and, thus, had access to their names and DEA numbers.

### Identity Theft Scheme

15. It was part of the identity theft scheme that the defendant MANSOUR SALAHMAND was aware that he must be licensed to practice as a psychiatrist, in that he applied for a D.C. medical license, but did not provide sufficient information to receive one.

16. It was a further part of the scheme that the defendant MANSOUR SALAHMAND was aware that he must be registered to prescribe controlled substances, in that he applied for a DEA registration number, but did not provide sufficient information to receive one.

17. It was a further part of the scheme that in or about 2004 the defendant MANSOUR SALAHMAND persuaded Dr. MP to supervise him at a clinic in the District of Columbia, by telling her that he would not be writing prescriptions for controlled substances.

18. It was a further part of the scheme that the defendant MANSOUR SALAHMAND, contrary to his promises and assurances to Dr. MP, did write prescriptions for controlled substances while at this clinic, that is, the defendant SALAHMAND used Dr. MP's name and DEA number without her permission for many prescriptions for Schedule II controlled substances.

19. It was a further part of the scheme that, thereafter, although Dr. MP refused the defendant MANSOUR SALAHMAND's requests to supervise him at other clinics, the defendant

SALAHMAND represented to other clinics Dr. MP was, in fact, supervising him and provided false documents to these clinics in order to be hired as a psychiatrist.

20. It was a further part of the scheme that the defendant MANSOUR SALAHMAND, used Dr. MP's name and DEA number without her permission or knowledge for prescriptions of controlled substances for over a hundred prescriptions for controlled substances for patients at four different clinics.

21. It was a further part of the scheme that the defendant MANSOUR SALAHMAND asked Dr. DH to supervise him; although Dr. DH spoke to the defendant SALAHMAND about entering into such agreement, Dr. DH did not in fact agree to supervise the defendant SALAHMAND.

22. It was a further part of the scheme that although Dr. DH did not agree to the defendant MANSOUR SALAHMAND's requests for supervision, the defendant SALAHMAND represented to clinics in the District of Columbia and Maryland that Dr. DH was, in fact, supervising him and provided false documents to these clinics in order to be hired as a psychiatrist.

23. It was a further part of the scheme that the defendant MANSOUR SALAHMAND used Dr. DH's name and DEA number without his permission or knowledge on prescriptions for controlled substances for patients at various clinics.

24. It was a further part of the scheme that although Dr. HK was asked to supervise the defendant MANSOUR SALAHMAND, Dr. HK rejected the suggestion; the defendant SALAHMAND, however, used Dr. HK's name and DEA number without his permission or knowledge on prescriptions for controlled substances.

25. It was a further part of the scheme that, although defendant MANSOUR SALAHMAND did not even ask Dr. TM to supervise him, the defendant SALAHMAND used Dr. TM's name and DEA number without his permission or knowledge on prescriptions for controlled substances.

26. It was a further part of the scheme that the defendant MANSOUR SALAHMAND, at times, used a pre-printed prescription pad with the names of Doctors MP, DH, and TM, and their corresponding DEA numbers, without the permission or knowledge of those three physicians.

27. From in or about August 2004 to in or about October 2006, in the District of Columbia and elsewhere, Defendant MANSOUR SALAHMAND did transfer, possess, and use, without lawful authority, in and affecting interstate commerce, a means of identification of another person with the intent to commit, or aid and abet, any unlawful activity that constitutes a violation of Federal law, or that constitutes a felony under any applicable State or local law, that is, MANSOUR SALAHMAND transferred, possessed, and used the name and DEA number belonging to Dr. MP to write prescriptions for controlled substances with the intent to commit and aid and abet the unlawful activity of distribution of prescription controlled substances, which is a violation of federal law pursuant to Title 21, United States Code, Section 841(a)(1).

**(Identity Theft, in violation of Title 18, United States Code, Section 1028(a)(7)).**

COUNT TWO

(IDENTITY THEFT)

1. Paragraphs 1 through 26 of Count One of this Indictment are realleged and incorporated by reference as if set out in full.

2.      From in or about March 2006 to in or about October 2006, in the District of Columbia and elsewhere, Defendant MANSOUR SALAHMAND did transfer, possess, and use, without lawful authority, in and affecting interstate commerce, a means of identification of another person with the intent to commit, or aid and abet, any unlawful activity that constitutes a violation of Federal law, or that constitutes a felony under any applicable State or local law, that is, MANSOUR SALAHMAND possessed, transferred, and used the name and DEA number belonging to Dr. DH to write prescriptions for controlled substances and non-controlled substances with the intent to commit and aid and abet the unlawful activity of distribution of prescription controlled substances, which is a violation of federal law pursuant to Title 21, United States Code, Section 841(a)(1).

**(Identity Theft, in violation of Title 18, United States Code, Section 1028(a)(7)).**

COUNT THREE

(IDENTITY THEFT)

1.      Paragraphs 1 through 26 of Count One of this Indictment are realleged and incorporated by reference as if set out in full.

2.      From in or about September 2006 to on or about October 2006, in the District of Columbia and elsewhere, Defendant MANSOUR SALAHMAND did transfer, possess, and use, without lawful authority, in and affecting interstate commerce, a means of identification of another person with the intent to commit, or aid and abet, any unlawful activity that constitutes a violation of Federal law, or that constitutes a felony under any applicable State or local law, that is, MANSOUR SALAHMAND transferred, possessed, and used the name and DEA number belonging to Dr. TM to write prescriptions for controlled substances with the intent to commit and aid and abet

the unlawful activity of distribution of prescription controlled substances, which is a violation of federal law pursuant to Title 21, United States Code, Section 841(a)(1).

**(Identity Theft, in violation of Title 18, United States Code, Section 1028(a)(7)).**

## COUNT FOUR

### (IDENTITY THEFT)

1.    Paragraphs 1 through 26 of Count One of this Indictment are realleged and incorporated by reference as if set out in full.

2.    From in or about February 2006 to in or about April 2006, in the District of Columbia and elsewhere, Defendant MANSOUR SALAHMAND did transfer, possess, and use, without lawful authority, in and affecting interstate commerce, a means of identification of another person with the intent to commit, or aid and abet, any unlawful activity that constitutes a violation of Federal law, or that constitutes a felony under any applicable State or local law, that is, MANSOUR SALAHMAND transferred, possessed, and used the name and DEA number belonging to Dr. HK to write prescriptions for controlled substances with the intent to commit and aid and abet the unlawful activity of distribution of prescription controlled substances, which is a violation of federal law pursuant to Title 21, United States Code, Section 841(a)(1).

**(Identity Theft, in violation of Title 18, United States Code, Section 1028(a)(7)).**

## COUNTS FIVE - SEVEN

### (UNLAWFUL USE OF DEA REGISTRATION NUMBER BELONGING TO ANOTHER)

1.    Paragraphs 1 through 26 of Count One of this Indictment are realleged and incorporated by reference as if set out in full.

2. In or about the dates listed below, in the District of Columbia and elsewhere, the defendant MANSOUR SALAHMAND did knowingly, intentionally, and unlawfully use a DEA registration number that was issued to another person, a doctor whose initials are listed below, in the course of the distribution and dispensing of Schedule II controlled substances:

| COUNT | DATES | DOCTOR |
|---|---|---|
| FIVE | August 2004 - October 2006 | M.P. |
| SIX | March 2006 - October 2006 | D.H. |
| SEVEN | September 2006 - October 2006 | T.M. |

**(Unlawful Use in the Dispensing of Controlled Substance - DEA Number Issued to Another Person, in violation of Title 21, United States Code, Section 843(a)(2)).**

COUNTS EIGHT - ELEVEN

1. Paragraphs 1 through 26 of Count One of this Indictment are realleged and incorporated by reference as if set out in full.

2. On or about September 22, 2006, within the District of Columbia, the defendant MANSOUR SALAHMAND, with intent to defraud or injure another did make a forged written instrument that purported to be a legal document capable of operating to the prejudice of another, that is, prescriptions of a duly licensed physician for the medicine as described below, by signing the name of Dr. D.H., on said prescriptions without the permission or knowledge of Dr. D.H., knowing that the prescriptions had been falsely made and forged:

| COUNT | MEDICINE |
|---|---|
| EIGHT | Prozac |
| NINE | Effexor |

9

| COUNT | MEDICINE |
|---|---|
| TEN | Seroquel |
| ELEVEN | Clonidine |

**(Forgery, in violation of 22 D.C. Code §§ 3241(b), 3242(c)).**

A TRUE BILL

FOREPERSON.

ATTORNEY FOR THE UNITED STATES IN
AND FOR THE DISTRICT OF COLUMBIA

10